The Honorable Lisa Ferrell State Representative 3505 Kavanaugh Little Rock, AR 72205
Dear Representative Ferrell:
This is in response to your request for an opinion concerning the legality of a homecare marketing program under federal and state laws. Your request is on behalf of a constituent who may be interested in a particular business venture. I am statutorily prohibited from the private practice of law, and thus, cannot provide the detailed legal advice for which private counsel should be employed before making such business decisions. I can however, in response to your question, provide more general information about federal and state anti-kickback laws governing Medicare and Medicaid funds, a topic over which my office has some enforcement jurisdiction.
As I understand it, the hypothetical program about which you inquire is one in which representatives of the homecare marketing program would perform certain tests in a physician's office on the physician's behalf, but would not charge the physician. The tests would determine which of the physician's patients would be most suitable to receive the homecare offered by the program. Rather than charging the physician, the program representatives would teach the physician how to bill (including Medicare and Medicaid) for the tests that they performed in the hopes that thereafter the physician would refer to the program those patients whose tests showed suitability for homecare services offered by the program. Thus, the physician would receive compensation (including from Medicare and Medicaid) for the "homecare suitability test," which cost the physician nothing, in return for which the program would gain referrals for its homecare treatment based on its own tests performed in the physician's office.
It is my opinion that such a program would probably run afoul of both federal and state law prohibiting certain remuneration in connection with Medicare and Medicaid charges. Federal law covering Medicare (Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq.) makes the following conduct illegal:
(b) Illegal remunerations.
(1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind —
(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under title XVIII or a State health care program, or
(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, or service, or item for which payment may be made in whole or in part under title XVIII or a State health care program, shall be guilty of a felony[.]
* * *
(2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person —
(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under title XVIII, a State health care program, or
(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under title XVIII or a state health care program, shall be guilty of a felony[.]
42 U.S.C. § 1320a-7b(b).
Assuming the homecare treatment offered by the program would include services or items "for which payment may be made in whole or in part under [Medicare]," it is my opinion that the arrangement suggested by your hypothetical would violate either subparagraph (1) or (2) of § 1320a-7b(b). Under (1) the physician would receive remuneration (payment for the program tests performed in his office) in return for referring patients to the program's services or for ordering or recommending the use of its services. Under (2) the program would offer to pay remuneration (payment to which the program is entitled but which it assigns to the physician for the program tests performed in the physician's office) to induce the physician to refer patients to its services or to recommend the use of its services.[1]
State law tracks the federal statute nearly verbatim with respect to the same conduct and funds from the Arkansas Medicaid Program, but provides for civil penalties through this office. A.C.A. § 20-77-902(6) (7) (Cum. Supp. 1993).
Federal law provides exceptions so that the penalties for conduct under 42 U.S.C. § 1320a-7b(b)(1) and (2) do not apply to:
(A) a discount or other reduction in price obtained by a provider of services or other entity under title XVIII or a State health care program if the reduction in price is properly disclosed and appropriately reflected in the costs claimed or charges made by the provider or entity under title XVIII or a State health care program;
(B) any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services;
(C) any amount paid by a vendor of goods or services to a person authorized to act as a purchasing agent for a group of individuals or entities who are furnishing services reimbursed under title XVIII or a State health care program if —
(i) the person has a written contract, with each such individual or entity, which specifies the amount to be paid the person, which amount may be a fixed amount or a fixed percentage of the value of the purchases made by each such individual or entity under the contract, and
(ii) in the case of an entity that is a provider of services (as defined in section 1861(u)), the person discloses (in such form and manner as the Secretary requires) to the entity and, upon request, to the Secretary the amount received from each such vendor with respect to purchases made by or on behalf of the entity;
(D) a waiver of any coinsurance under part B of title XVIII by a Federally qualified health care center with respect to an individual who qualifies for subsidized services under a provision of the Public Health Service Act; and
(E) any payment practice specified by the Secretary in regulations promulgated pursuant to section 14(a) of the Medicare and Medicaid Patient and Program Protection Act of 1987.
42 U.S.C. § 1320a-7b(b)(3).
State law provides exceptions similar to the federal statute in §20-77-902(7)(B), but only with respect to conduct described in §20-77-902(7)(A). Thus the state exceptions are narrower.
Federal regulations also provide for many safe harbors for conduct which would otherwise violate federal law. 42 C.F.R. § 1001.952 (1994). In particular, paragraph (f) provides a safe harbor for certain types of remuneration otherwise made illegal.
Without knowing more details of a particular program, however, I am unable to offer an opinion as to whether any particular exceptions or safe harbors apply.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General David R. Raupp.
Sincerely,
WINSTON BRYANT Attorney General
WB:DRR/cyh
[1] The Office of the Inspector General of the Department of Health and Human Services has published further helpful information concerning inquiries like yours in the Federal Register under the heading "Special Fraud Alerts." 59 F.R. 65372 (Dec. 1994). In particular, the OIG discusses Joint Venture Agreements similar to the hypothetical program about which you inquire, id. at 65373-74, and clinical lab services which may also come within your hypothetical situation, id. at 65376-78.